**IN UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO\**

Civil Action No.

MCIHAEL SEXTON,

        Plaintiff,

V.

LT. SEAN FARIS, lieutenant for the Denver Police Department, in his individual capacity;

JOHN DOE, UNKNOWN SUPERVISOR, officer of the Denver Police Department; in his

individual, capacity.

CITY AND COUNTY OF DENVER, a municipality.

        Defendants.

---

**COMPLAINT AND JURY DEMAND**

---

        Plaintiff Michael Sexton by and through her counsel, Kenneth Mark Burton

of the Law Office of Mark Burton, P.C. hereby submits her Complaint and Jury Demand,

and states as follows

:

## INTRODUCTION

1.      On or about August 25, 2020, the Denver Police Department was forcibly removing homeless people from a homeless encampment. Upset by this disregard for the wellbeing of our homeless community, a group of local citizens assembled into a small crowd to demonstrate their disdain for the Denver Police Department's treatment of our homeless community. Protesters openly voiced their demand that Denver Police stop their sweeps of the homeless encampments, expressing their disagreement with police's actions in Denver, Colorado.

2.      Denver Police set up a perimeter by holding up yellow tape to separate the protesters from the police operation. Michael Sexton, a journalist/protester, began filming the event, including interactions with Denver Police with a cell phone, and made some statements with respect to police action, protesting Denver Police's abusive conduct. Without provocation or legal basis, Denver Police Officer Lt. Faris walked up to Mr. Sexton, who was lawfully standing behind the temporary perimeter established for lawful protests and holding his camera above his head with his hands clearly visible filming the police's treatment of the homeless and sprayed him directly in the eyes with pepper spray causing him pain, temporary blindness, and an extended period of agony. This outrageous governmental conduct shocks the conscience and rises to the level of a Fourteenth Amendment violation.

3.      Mr. Sexton was never arrested or charged with any alleged criminal wrongdoing. As such, no legal or reasonable basis for the use of any force against Mr. Sexton existed, as he was an innocent citizen that had been exercising his civil right to protest police misconduct and to carry out his journalism by filming the police. Faris' gross and abusive conduct was retaliatory and designed to chill Mr. Sexton's exercise of free speech, and effectively silenced Mr. Sexton.

## JURISDICTION AND VENUE

4.      This action arises under the Constitution and laws of the United States and State of Colorado, including Article III, Section 1 of the U.S.C. and 42 U.S.C. § 1983.

5.      Jurisdiction is conferred upon this court pursuant to 28 U.S.C. §§ 1331 and 1343, 42 U.S.C. § 1988, as amended by the Civil Rights Attorney Fee Award Act of 1976; and 28 U.S.C. §§ 1367(a) and 2201.

6.      Venue is proper in this Court pursuant to 28 U.S.C. § 139l(b), as all of the events giving rise to the claims occurred in the District of Colorado.

## PARTIES

7.      Plaintiff Michael Sexton is a citizen of the United States and, at all times relevant to this suit, is, and was a resident of the State of Colorado.

8.      Defendant Lieutenant Sean Faris ("Lt. Faris") is a citizen of the United States and resident of the State of Colorado. At all times relevant to this action, Lt.  Faris was acting under the color of law in his capacity as a Lieutenant for the Denver Police Department located at: 1331 Cherokee, Denver, Colorado 80204. Lt. Faris is being sued in his individual and official capacity for his intentional chilling of Mr. Sexton 's free speech through his unprovoked and sadistic attack against Mr. Sexton.

9.      Defendant John Doe  ("Unknown Supervisor")  is a citizen of the United States and resident of the State of Colorado. At all times relevant to this action, this Unknown Supervisor was acting under the color of law in his capacity as a Lieutenant or Captain for the Denver Police Department located at: 1331 Cherokee, Denver, Colorado 80204. The Unknown Supervisor is being sued in

his individual and official capacities for failing to intervene and prevent the unnecessary and unprovoked attack against Mr. Sexton with the intent of allowing Mr. Sexton to be subjected to extreme violence without cause, despite recognizing this abusive and aggressive behavior and having an opportunity and duty to prevent unnecessary violence against innocent citizens.

### **FACTUAL ALLEGATIONS**

A.      **The Defendants Recklessly Attacked Mr. Sexton without Provocation or need for use of force.**

10.     On or about August 25, 2020, the Denver Police Department was forcibly removing homeless people from a homeless encampment. A small crowd of demonstrators gathered. The Police held up yellow tape to separate the protesters from the police operation.

11.     Michael Sexton was present and was exercising his first amend right to film the police, filming the event with a cell phone. Mr. Sexton is a journalist who has a Youtube channel called "Pikes Peak Accountability" where he publishes his videos for public viewing.

12.     Mr. Sexton also made some statements with respect to police action, protesting the police's abusive conduct and in support of the homeless.

13.     As Mr. Sexton stood behind the correct side of the yellow tape of a designed area while filming the police's treatment of the homeless with his hands clearly in the air, Denver Police Officer Lt. Faris walked up to Mr. Sexton and sprayed him directly in the eyes with pepper spray, without provocation or legal basis for use of force, causing him pain, temporary blindness, and an extended period of agony.

14.     Mr. Sexton was never arrested or charged with any alleged criminal wrongdoing. As such, no legal or reasonable basis existed to us any force against Mr. Sexton, an innocent citizen that

had been exercising his civil right to free speech. Faris' gross and abusive conduct was retaliatory and designed to chill Mr. Sexton's exercise of free speech, and effectively silenced Mr. Sexton

15.     Mr. Faris' hate and disdain for Mr. Sexton was evidenced by his anger and facial expressions expressed immediately during this hostile interaction and is indicative of a malicious and sadistic intent to injure an innocent citizen, which is outrageous and shocking to the conscience as proscribed by the Fourteenth Amendment.

16.     The constitutionality of Mr. Sexton's documentation of a peaceful protest and protest of law enforcement misconduct was well established in this and the surrounding jurisdiction prior to his unconstitutional attack and this act of retaliation. *See Irizarry v. Yehia,* 21-124 (10th Cir. July 11, 2022); *Worrell v. Henry*, 219 F.3d 1197, 1212 (10th Cir. 2000). As such, Defendant Faris and the Unknown Supervisor knew to a degree of certainty that they were violating Mr. Sexton's constitutional rights guaranteed under the First and Fourteenth Amendments.

17.     The Defendant Faris and the Unknown Supervisor acts and omission, detailed herein, directly violated Mr. Sexton's First and Fourteenth Amendment rights, and were the legal and proximate result of the injuries to Plaintiff, including, but not limited to: pain and suffering, humiliation, physical injuries to Mr. Sexton's eyes and skin, and severe emotional distress which has damaged his quality of life.

> **B.     Defendants Retaliated Against Mr. Sexton For Exercising Right to Free Speech.**

18.     Defendant Faris and the Unknown Supervisor knew very well that Mr. Sexton was a peaceful protestor, and that he had been lawfully participating in a public protest of law enforcement misconduct in furtherance of his First Amendment right to protest and was legally filming the police. In direct response to Mr. Sexton's exercise of his civil right to protest law enforcement misconduct and to film the police, Defendant Faris and Unknown Supervisor

recklessly and maliciously attacked Mr. Sexton, or allowed him to be attacked, with complete disregard for Mr. Sexton's First Amendment right to protest and to film the police. In fact, this abusive and retaliatory conduct was taken with the direct intention of violating Mr. Sexton's civil rights. But for Mr. Sexton's exercise of his right to protest, Defendant Faris and Unknown Supervisor would not have attacked him or allowed him to be attacked.

19.     The constitutionality of Mr. Sexton's conduct was well established in this and the surrounding jurisdiction prior to his unconstitutional attack and this act of retaliation. As such, Defendant Faris and Unknown Supervisor knew to a degree of certainty that they were violating Mr. Sexton's constitutional rights guaranteed under the First and Fourteenth Amendment.

20.     Defendants Faris and the Unknown Supervisor intentionally chilled Mr. Sexton's free speech in furtherance of the widespread and well accepted policies of the City and County of Denver and the Denver Police Department, specifically a Cowboy culture and its derivative and pervasive attacks against citizens for contempt of cop often characterized as attitude arrests. This Cowboy culture within the Denver Police Department has existed for decades and is maintained off the books due to Denver's consistent effort to cover-up the misconduct of officers by falsifying reports or turning a blind eye to the use of excessive force, and persistent refusal to discipline officers for their deliberate violation of internal policies and Federal law enforcement standards.

21.     Defendant Faris and Unknown Supervisor, including the City and County of Denver are jointly liable for the severe injuries and substantial damages suffered by Plaintiff.

       **C.     Unknown Supervisor Failed to Intervene When Officer Faris Began Charging at Mr. Sexton With the Intent to Harm Him.**

22.     The Unknown Supervisor was present during the protests against law enforcement, and witnessed Mr. Sexton peacefully assemble in the designated area as he videotaped the public protest. The Unknown Supervisor witnessed this public protest against Denver law enforcement,

and despite his ability and authority to prevent or stop any unlawful attacks against the protestors, in furtherance of Denver's Cowboy culture, the well documented practice of attitude arrests for contempt of cop, and violent treatment of protesters, the Unknown Supervisor failed to intervene to prevent this retaliatory and unconstitutional attack against an innocent citizen, allowing Mr. Sexton to be sprayed in the eyes with a dangerous chemical. This sadistic conduct was taken with knowledge that Mr. Sexton would likely lose his vision without an opportunity to flush his eyes out due to the absence of a wash station or water source that was immediately available, which would increase the likelihood of injury and exacerbate his suffering.

23.     The Unknown Supervisor and Officer Faris refused to comply with Denver's policy and duty to provide Mr. Sexton medical attention and access to a flush station to remove the dangerous chemical that they sprayed in his eyes, which shows a malicious and sadistic intent to injure Mr. Sexton in direct violation of the Fourteenth Amendment right to be free from outrageous governmental conduct.

> **D.     The City and County of Denver's Unconstitutional Policies Were The Driving Force Behind Mr. Sexton's Constitutional Violation**

24.     The City and County of Denver, by and through, its Denver Police Department have had long standing and widespread policies, customs, and/or practices that allowed the acts described herein, specifically Faris' abusive use of force against Mr. Sexton and chilling of his free speech, which were necessarily and consciously approved by Mayor Hancock, Chief of Police Pazen, and Safety Manager Robinson; thus, representing a deliberate choice to violate Mr. Sexton's First, Fourth, and Fourteenth Amendment rights, a course of action taken in place of other more appropriate alternative.

25.     Official policy makers Mayor Hancock, Chief of Police Pazen, and Safety Manager Robinson have final decision-making authority over the Denver Police Department and its staff,

and are responsible for the operations, practices, and totality of conditions of the Denver Police

Department. Denver acts and fails to act through its official policy makers, whose acts and

omissions represent the policy, practices, and customs of the City and County of Denver.

26.     The City and County of Denver and the Denver Police Department have and had numerous

policies, practices, and/or customs that were the driving force behind and compelled the violation

of Mr. Sexton's civil rights. These policies and practices include, but are not limited to:

    a.   Cowboy culture and attitude arrests, designed to punish citizens for opposing Denver Police and inadequate training thereon.

    b.   Targeted attacks of protester by Denver Police and inadequate training thereon,

    c.   Failure to give audible dispersal orders before the use of force and failure to train thereon;

    d.   Indiscriminate and inappropriate use of chemical munitions such as tear gas, an inadequate training thereon;

    e.   Indiscriminate and inappropriate use of Pepper Balls, including as a crowd control/dispersal measure or on anyone disrupting traffic and without warning, and inadequate training thereon;

    f.   Inappropriate use of pepper spray and inadequate training thereon;

    g.   Failure to require officers to complete timely use-of-force reports, which negatively impacted officer accountability, and failure to train thereon;

    h.   Inadequate Body Worn Camera activation during crowd-control situations and failure to train thereon;

    i.   Failure to discipline officers for the excessive use of force, and failure to train thereon; and

    j.   Dictating the rules of engagement for mutual assistance agencies from outside jurisdictions while simultaneously allowing agencies to follow their own policies.

## **FACTUAL HISTORY**

27.     The Denver Police Department has a long history of targeting activists and protesters. The

Denver Police are hostile to protesters, particularly those who call into question the policies of the

City and County of Denver. There is a history of targeting, and retaliation against protesters who engage in speech activities in public places that amounts to a custom, policy, or practice of arresting, intimidating, and retaliating against protesters, particularly those protests that are critical of the City and County of Denver and its police department in public places in Denver. For decades, the Denver Police maintained a list of known activists and protesters with secret spy files on more than 3,200 people and 208 organizations. For most of these people and organizations, their only conduct was attending peaceful demonstrations. The Denver Police kept files on them anyway. During this period, Denver Police officers spied on certain protest leaders. Ultimately, the Denver Police agreed to end certain practices aimed at policing free-speech activities.

28.     This, however, was not the end of the Denver Police's targeting of activists and Demonstrators and a few cases are mentioned below.

29.     On August 25, 2009, during the Democratic National Convention that was held in Denver, solid riot-equipped police stopped a peaceful protest march on 15th street in downtown Denver. A second group of riot police encircled the protesters and conducted a mass arrest of those protesters for marching without a permit. Without probable cause, the Denver Police arrested 96 peaceful protesters. The police charged the protesters with failing to observe a dispersal order, even though they later acknowledged that no such order was ever given. Nonetheless, the Denver Police continued to target these protesters, refusing to drop the charges. The protesters eventually prevailed on these charges and brought a civil rights action. *Acks v. Denver,* 09-cv-02197. Denver later agreed to a Class Action settlement for depriving these protesters of their constitutional rights.

30.     In the fall of 2011, the Denver Police targeted Occupy protesters, arresting dozens and deploying pepper balls in response to peaceful protests. Many of those demonstrators would continue to protest Denver Police violence and the treatment of the homeless for years to come.

On August 14, 2014, Levi Frasier witnessed DPD officers punch an unarmed civilian numerous times in the head and tripped a heavily pregnant woman, causing her to fall to the ground. Believing the officers were committing illegal acts of misconduct, Mr. Frasier video-recorded the officers with his tablet. Upon seeing Mr. Frasier recording, DPD officers surrounded Mr. Frasier, threatened him with arrest, and demanded he turn over his video. Mr. Frasier refused, and a DPD officer seized his tablet from him and searched it illegally. Despite Denver's policy and training on the First Amendment, the officers nonetheless violated Mr. Frasier's First Amendment right to gather and record information on matters of public concern.

31.     In July 2015, Eric Brandt and Mark Iannicelli handed out fliers with information about jury-nullification in front of the Lindsey-Flanigan Courthouse in Denver. Brandt and Iancelli were charged with Tampering with a Jury. The trial court dismissed the charges on First Amendment grounds and the dismissal was affirmed on other grounds in *Ianncelli v. People*, 449 P.3d 387 (Colo. 2019).

32.     On July 5, 2018, Susan Greene, a journalist, was driving to the bank when she saw a black man handcuffed and naked on the sidewalk across from the State Capitol Building surrounded by DPD officers. Concerned as a public citizen and journalist by the questionable appearance of an African American man unclothed, nonthreatening, and in handcuffs, Ms. Greene parked her vehicle and began to take pictures on a public sidewalk where she was not obstructing police investigations. DPD officers told her to stop. Ms. Greene stated that it was a public sidewalk and that she had the right to take photos. The officers falsely accused Ms. Greene of violating the arrestee's HIPAA rights and of blocking the door to an ambulance. The officers then forcefully and painfully arrested Ms. Greene in retaliation for exercising her First Amendment right to photograph the police on a public sidewalk and handcuffed her for ten minutes before releasing

her. Ms. Greene was never charged with a crime. Ms. Greene's First Amendment, First Amendment retaliation, and Fourth Amendment excessive force claims against Denver and DPD officers were settled in August 2019 for $50,000 in addition to mandating First Amendment training for DPD officers.

33.      On September 23, 2018, Brian Loma and Mikel Whitney were on the 16th Street Mall distributing meals to the homeless with Ms. Sodaro. Shortly after Ms. Sodaro's arrest, Mr. Loma decried the treatment of homeless people - "what we have here [are] … laws that criminalize people who can't pay rent. They don't want your tourist dollars to recognize that we have problems in this city! The laws say that if you're not paying money, you can't sit down." As he continued, Mr. Loma shouted "fuck the police!" He was immediately arrested for disturbing the peace. Mr. Loma and Mr. Whitney have filed a 1983 civil rights claim which is currently ongoing. On September 24, 2018, Eric Brandt was in the Sixteenth Street Mall protesting the arrests of Ms. Sodaro, Mr. Loma, and Ms. Whitney. Mr. Brandt stood on a public sidewalk and shouted, "we want justice for Caryn Sodaro! Caryn Sodaro is a political prisoner for free speech!" Defendant Kitchens, Defendant Cpl. Chavez, and three other officers were present and closely watching Mr. Brandt. Defendant Kitchens expressed his annoyance and stated loud enough for other people in the mall to hear, "unfortunately, we can't be offended, but if a private citizen is willing to sign a complaint, I'd be happy to arrest him." A woman standing nearby stated that she was offended and would sign a complaint. Defendants Kitchens and Cpl. Chavez then arrested Mr. Brandt in retaliation for his protected speech and cited him with disturbing the peace. Upon making the arrest, Defendant Cpl. Chavez radioed Defendant Guzman explaining that they had Mr. Brandt in custody and that a private citizen was willing to sign a complaint against him. Guzman explained that as long as they had one signed complaint against him, then the arrest was valid. After spending

two days in jail, Mr. Brandt was released, and his charge was dropped the next day, on September 27, 2018.

34.     On May 28, 2020, Abade Irizarry, Gabriel Thorn, Amy Schneider, Michael McDaniel, and other similarly situated Plaintiffs protested in Denver to express their outrage at the death of George Floyd and other acts of violence perpetrated by police officers against the African American community. During the demonstration, DPD officers violated the Plaintiffs' First Amendment right to free speech and their Fourth Amendment right against excessive force by using pepper spray, pepper balls, rubber bullets, flashbang grenades, and tear gas to punish the Plaintiffs for demonstrating against police brutality. On June 5, 2020, Judge Brooke Jackson of the U.S. District Court of the District of Colorado found the defendants in violation of the plaintiffs' First and Fourth Amendment rights and issued a temporary restraining order to enjoin Denver and DPD from employing chemical weapons or projectiles of any kind against persons engaging in peaceful protest.

35.     On or about August 25, 2020, the Denver Police were forcibly removing homeless people from a homeless encampment. A small crowd of demonstrators gathered and were expressing their disagreement with the police's actions. The police held up yellow tape to separate the protesters from the police operation. Michael Sexton was present and was filming the event with a cell phone and may have made some statements protesting the police action. While Mr. Sexton was on the correct side of the yellow tape away from the police operation, Denver police officer Lt. Faris walked up to Mr. Sexton and sprayed him directly in the eyes with pepper spray causing him pain, temporary blindness, and an extended period of agony. Mr. Sexton was never charged with committing any crime.

36.     Above, is a small selection of incidents where Denver Police targeted protesters, including Caryn Sodaro, whether for their viewpoint, the manner in which these protesters communicated their message, or simply because the Denver Police do not like the act of protesting and the messages of these protesters..

37.     Upon information and belief, the Denver Police have engaged in a concerted effort to target protesters, including Caryn Sodaro, such that the City and County of Denver's official policy makers Hancock, Pazen and Robinson had constructive knowledge, of these unconstitutional practices.


1.  **Denver's Widespread Customs and Practices**

38.     While many of these policies, customs, and/or practices were set off or instituted by the personal actions of Denver's official policy makers Hancock, Pazen, and Robinson, or by lower level staff, including Faris, that exercised final authority without supervision or review, many of these policies, customs, and/or practices were so widespread and commonly used by Denver police officers that it is evidence that these customs or usages named above had force of law, including Denver's Cowboy culture and attitude arrests that set the stage for numerous officers to retaliate against and attack citizens when they feel disrespected. Thus, it is presumed that Hancock, Pazen, and Robinson had actual or constructive notice of these unconstitutional policies, customs, and/or practices. Still, Denver's policy makers failed to rectify these obvious needs for correction and obvious unconstitutional policies, customs, and/or practices, let alone implement policies that would adequately correct or compensate for these abusive practices.

39.     These decisive actions are indicative of a deliberate choices by Hancock, Pazen, and Robinson's to violate Mr. Sexton's civil rights and persons who come into contact with Denver law enforcement, a course of action taken from amongst other alternatives that were more appropriate and constitutional.

40.     The City and County of Denver, through the Denver Police Department, and its official policy makers has a custom and wide spread practice of failing to comply with their own written policies with respect to, including, but not limited to: (1) First Amendment protests; (2) Retaliation against citizens; (3) Reporting official misconduct; (4) investigating the use of force by personnel against citizens; (5) use of force and/or pepper spray (6) discharging and/or disciplining officers for misconduct; and (7) discharging and/or disciplining officers for concealing misconduct; therefore, representing a systemic failure to enforce written policy, largely motivated by Denver's efforts to escape civil liability. These unconstitutional policies, customs, and practices had the direct effect of violating the Plaintiff Mr. Sexton's civil rights, and were the driving force behind this First, Fourth, and Fourteenth Amendment violations.

## 2.   Denver's Failure to Train, Supervise, and/ or Discipline

41.      In addition, the City and County of Denver, through its official policy makers- Hancock, Pazen, and Robinson, failed to properly train, supervise, and/or discipline its subordinates Faris, the Unknown Supervisor, and others to: (1) prevent the unnecessary use of force against citizens; 2) prevent Denver's widespread Cowboy culture and attitude arrests; (3) prevent attacks against citizens who protest police misconduct; (4) prevent the cover-up of official misconduct; and (5) ensure that law enforcement are discharged or properly disciplined for their intentional misconduct. Alternatively, if Denver's training, supervision, procedures, or guidelines did exist,

they are, and were, grossly inadequate so to ensure the above stated deficiencies were corrected or avoided.

42.    Hancock, Pazen, and Robinson, as superior officers, are responsible for the training supervision and discipline of personnel at the Denver Police Department. And considering this duty and responsibility of these superior officers, who exercise authority over their appropriate agencies, the clear lack of proper training and supervision with respect to the above stated deficiencies, and likelihood that this inadequate training and supervision would result in the transgression of persons constitutional rights such as those described herein, the fact that these superior officers fail to train and properly supervise, amounts to deliberate indifference to the constitutional rights of persons, including Mr. Sexton, with whom the Denver Police Department and its personnel come into contact with.

43.    These above stated policies, customs, and practices, and the lack thereof, led to Mr. Sexton's constitutional rights to be violated, as detailed herein, and if these deficiencies and lack of regulations persists including the systemic failure to enforce written policies with respect to the abuses described above, the Plaintiff Mr. Sexton and citizens in Colorado will remain in constant peril of being physically abused and retaliated against for exercising the right to free speech. Therefore, it is within the interest of justice that the Federal Court enjoin the defendants from perpetuating its Cowboy culture and attitude arrest policies, amongst other pervasive unconstitutional practices that have and continue to violate citizen's civil rights.

### FIRST CLAIM FOR RELIEF
### AND SUPPORTING FACTUAL ALLEGATIONS
### 42 U.S.C. §1983—Fourth and Fourteenth Amendment Violation
### (Excessive and Unreasonable Force)

44.     Plaintiff hereby incorporates all other paragraphs of this Complaint as if fully set forth herein.

45.     At all times relevant to this action, the Defendants were acting under the color of state Law.

46.     Defendant Faris deprived Mr. Sexton of his Fourth Amendment right to freedom from unreasonable and excessive force, or alternatively the Fourteenth Amendment protection from excessive use of force that amounts to governmental action which is arbitrary or "shocks the conscience" in violation of the Due Process clause, when Denver Police Officer Faris attacked Mr. Sexton without provocation or need for the use of force, as detailed in paragraphs 9-18, which was unreasonable under the rubric of *Graham v. Connor*, 490 U.S. 386, 395, 109 S. Ct. 1865, 104 L. Ed. 2d 443 ( 1989) and outrageous governmental conduct that shocks the conscience under *County of Sacramento v. Lewis*, 523 U.S. 833, 843-44(1998).

47.      By way of illustration, not limitation, Defendants violated Mr. Sexton's right to be free from excessive force by: (1) Faris recklessly, willfully, maliciously, and intentionally attacking Mr. Sexton without provocation by spraying him in the face with pepper spray; and (2) Unknown Supervisor failed to intervene despite being aware of Faris' malevolent intent to harm protestors.

48.     Despite the clear provisions of the Fourth Amendments and its prohibitions against the use of unreasonable force, Faris and Unknown Supervisor persisted in imposing conditions and practices which violated Mr. Sexton's civil rights to be free from excessive force. *Graham v. Connor,* 490 U.S. 386, 395, l 09 S. Ct. 1865, 104 L. Ed. 2d 443 (1989).

49.     Faris' use of force against Mr. Sexton was objectively unreasonable in light of the facts and circumstances confronting him, notwithstanding his underlying intent or motivation. *Morris v. Noe*, 672 F.3d 1185, 1195 (10th Cir. 2012).

50.     For instance, a careful review of the facts and circumstances of this particular case, including [1] the severity of the crime at issue, [2] whether the suspect poses an immediate threat to the safety of the officers or others, and [3] whether he is actively resisting arrest or attempting to evade arrest by flight, as set forth in *Graham v. Connor*, 490 U.S. 386,396, 109 S. Ct. 1865 104 L. Ed. 2d 443 (1989), evinces that Faris' conduct was grossly excessive. There was no crime committed by Mr. Sexton, nor did he pose a threat when he was exercising his constitutional right to free speech.

51.     The Defendants' intentional and malicious use of excessive force against Plaintiff and intentional refusal to intervene to protect Mr. Sexton's rights directly and proximately caused his injuries. As a direct and proximate result of the acts, omissions, and violations alleged above, Plaintiff has suffered damages, injuries, pain and suffering, inconvenience, emotional distress, impairment of quality of life, past and further economic losses, reasonable and necessary medical, hospital, and other expenses, amongst other injuries.

52.     The existence of a policy is evidenced by expert witness reports identifying numerous DPD policies and customs. *Epps v. City & Cnty. Of Denver, 2022 U.S. Dist*. LEXIS 35895 (Civil Action No. 1 :20-cv-01878-RBJ; 1 :20-cv-01922-RBJ, [ECF Nos. 286-6 at ¶¶6-142, 286-7; see also supra, p. 3 n.3].

53.     Defendant Faris and Unknown Supervisor were, upon belief, following DPD policies, including their attitude arrests and harassment of protesters in furtherance of DPD's widespread and well settled Cowboy Culture practices that were approved by official policy makers.

54.     Faris and Unknown Supervisor's compliance with DPD policies led to violations of Fourth and Fourteenth Amendment rights; as such, a reasonable jury could find a causal connection between the policies and the violations.

55.     Plaintiff Mr. Sexton has a constitutionally protected right to be free from excessive force under the Fourth and Fourteenth Amendment that was clearly established before these abuses took place. Based on this premise, each of the Defendants had notice that they were violating Mr. Sexton's civil rights when they used excessive force against him without legal basis.

56.     Any reasonable law enforcement officer knew or should have known at the time of the complained of conduct, that Mr. Sexton had a right be free from excessive force, and that punishing a citizen through the use of force, without cause, violated the Fourteenth Amendment, as well as Federal law. Thus, the Defendants were on notice that their conduct violated Mr. Sexton's civil rights and Federal law based on the clearly established nature of the law.

57.     The Unknown Supervisor knowingly, intentionally, willfully, and wantonly ratified Defendant Faris' use of excessive and unreasonable force against Mr.Sexton, as detailed above, with the intent and understanding to violate his civil rights. This abusive and reckless conduct was taken with a reckless intent and complete disregard for Mr. Sexton's constitutional right to be free from unreasonable and excessive force. This supervisory action was taken with the mind set and understanding to violate Mr. Sexton's civil rights with knowledge that any inaction or proper guidance, Mr. Faris would injury Mr. Sexton and other citizens; thereby, depriving Mr. Sexton of his first and Fourteenth Amendment rights.

58.     The Defendants' actions, as described above, were undertaken intentionally, maliciously, and sadistically to cause harm and injury to Mr. Sexton and in reckless disregard for Mr. Sexton 's constitutionally protected right to be free from excessive and unreasonable force.

59.     As a direct and proximate result of the acts, omissions, and constitutional violations alleged above, Plaintiff Mr. Sexton has suffered damages, injuries, pain, and suffering, inconvenience, emotional distress, impairment of quality of life, humiliation, amongst other injuries.

**SECOND CLAIM FOR RELIEF**
**AND SUPPORTING FACTUAL ALLEGATIONS**
**42 U.S.C. §1983—First Amendment Violation**
**(Denial of Free Speech)**

60.     Plaintiff hereby incorporates all other paragraphs of this Complaint as if fully set forth herein.

61.     Defendants were acting under the color of state law in their actions and inactions which occurred of all times relevant to this action.

62. Plaintiff had protected First Amendment rights to express their viewpoints and support by attending peaceful protests to redress grievances against racial injustice and police misconduct/brutality, to assemble and associate with other peaceful protesters, and/or to record and document such public protests and the public response by the police to such protests.

63.     Mr. Sexton' s protests and videotaping of the protests in Downtown Denver were protected activities under the First Amendment.

64.     Recognizing that the Defendants· content-based speech restrictions "must satisfy strict scrutiny", and that this restriction must be "narrowly tailored to serve a compelling government interest." The Defendant Faris' intentional chilling of Mr. Sexton 's free speech by spaying him in the eyes with pepper spray is the sort of narrow tailoring in the strict-scrutiny context that is proscribed by the First Amendment.

65.     The protest-targeted attacks by Denver Police are content-based because it applied only to those participating in what the DPD referred to as Advocates for Homeless protesters. *See Golan v. Gonzales,* 501 F.3d 1179, 1196 (10th Cir. 2007) ("Content-based restrictions on speech are those which suppress, disadvantage, or impose differential burdens upon speech because of its content.")

66.     The protest-targeted attacks by Denver Police were not "narrowly tailored", because these restrictions on speech were not the least restrictive means of achieving the governments compelling objective. Pointedly, Denver Police Department and supporting agencies could have achieved the same compelling interest in a way that imposed a less onerous burden on speech. Upon belief, the government will attempt to identified disturbances occurring Downtown that involved substantial destruction of property and endangered public safety to justify its sadistic and abusive conduct; this, however, does not change the dynamic, because Mr. Sexton was peacefully protesting in a designated area behind the restrictive tape.

67.     Plaintiff Mr. Sexton has a constitutionally protected right to free speech under the First and Fourteenth Amendment that was clearly established before these abuses took place. Based on this premise, each of the Defendants had notice that they were violating Mr. Sexton's civil rights when they retaliated against him for exercising his right to free speech.

68.     Any reasonable law enforcement officer knew or should have known at the time of the complained of conduct, that Mr. Sexton was entitled to exercise his free speech, and that preventing a citizen for exercising his free speech violated the First and Fourteenth Amendment, as well as Federal law. Thus, the Defendants were on notice that their conduct violated Mr. Sexton's civil rights and Federal law, based on the clearly established nature of the law.

69.     The Unknown Supervisor knowingly, intentionally, willfully, and wantonly ratified Defendant Faris malicious conduct and chilling of free speech, as detailed above, with the intent and understanding to prevent Mr. Sexton and others from protesting DPD's reckless conduct. This abusive and reckless conduct was taken with a reckless intent and complete disregard for Mr. Sexton's constitutional right to free speech, and more was taken with the mind set and

understanding to violate Mr. Sexton 's civil rights; thereby, depriving him of his First and Fourteenth Amendment rights.

70.     The Defendants' actions, as described above, were undertaken intentionally, maliciously, and sadistically to cause harm and injury to Mr. Sexton, and in reckless disregard for Mr. Sexton 's constitutionally protected right to free speech.

71.     The deprivation of Mr. Sexton's constitutional rights, as described herein, occurred as a result of Denver's execution of its policies, customs, and practices; and therefore, is made actionable pursuant to 42 U.S.C. § 1983 under the rationale of *Monell v. Dep't of Social Serv.,* 436 U.S. 658 (1978).

72.     The acts and omissions of Hancock, Pazen, and Robinson, as official policymakers for Denver and its agencies, constitutes and established the unconstitutional policies, customs, and practices that were followed by Faris and Unknown Supervisor, that had the direct effect of subjecting Mr. Sexton to a deprivation of his constitutional right to be free from excessive force prescribed by the Fourth Amendment.

73.     These unconstitutional policies, customs, and practices, including, but not limited to: (1) fostering a Cowboy culture that encourages attitude arrests; (2) retaliating against citizens for protesting police misconduct; (3) failing to properly train officers to prevent unnecessary and retaliatory uses of force, as detailed in paragraphs l 9-26, and were the driving force behind Mr. Sexton's civil rights violations.

74.     As a direct and proximate result of the acts, omissions, and constitutional violations alleged above, Plaintiff Mr. Sexton has suffered damages, injuries, pain, and suffering, inconvenience, emotional distress, impairment of quality of life, humiliation, amongst other injuries.

**THIRD CLAIM FOR RELIEF**
**AND SUPPORTING FACTUAL ALLEGATIONS**

**42 U.S.C. §1983—First Amendment Violation**
**(Retaliation against all defendants)**

75.     Plaintiff hereby incorporates all other paragraphs of this Complaint as if fully set forth herein.

76.     At all times relevant to this action, the Defendants were acting under the color of state law.

77.     Plaintiff Mr. Sexton is an innocent citizen that lawful exercised his right to free speech under the First Amendment, by videotaping the abusive treatment of Denver citizens by the Denver Police Department and verbally calling out this misconduct in an effort to prevent further violations. Mr. Sexton 's free speech was met with violent force designed to chill his protest. More specifically, Faris aggressively sprayed Mr. Sexton with mace in the eye and face to cause him serious harm. This malicious and humiliating conduct was, also, designed to deter Mr. Sexton from documenting this abusive conduct.

78.     But for Mr. Sexton's protest and videotaping of DPD' s egregious conduct against other citizens-exercising his rights to free speech, the Defendant Mr. Faris would not have subjected Mr. Sexton to this retaliation and humiliation. Thus, the Defendants' retaliatory conduct was purely motivated by Mr. Mr. Sexton's exercise of his rights to reasonable accommodations.

79.     Any reasonable law enforcement officer knew or should have known at the time of the complained of conduct, that Mr. Sexton was entitled to exercise his free speech and be free from retaliation, and that punishing a citizen for exercising his free speech violated the First and Fourteenth Amendment, as well as Federal law. Thus, the Defendants were on notice that their conduct violated Mr. Sexton 's civil rights and Federal law, based on the clearly established nature of the law.

80.     The Unknown Supervisor knowingly, intentionally, willfully, and wantonly ratified Defendant Faris retaliatory and malicious conduct, as detailed above, with the intent and

understanding to punish Mr. Sexton for protesting DPD's reckless conduct. This abusive and reckless conduct was taken with a reckless intent and complete disregard for Mr. Sexton's constitutional right to be free from retaliation, and more was taken with the mind set and understanding to violate Mr. Sexton's civil rights; thereby, depriving him of his First and Fourteenth Amendment rights.

81.     The Defendants' actions, as described above, were undertaken intentionally, maliciously, and sadistically to cause harm and injury to Mr. Sexton, and in reckless disregard for Mr. Sexton's constitutionally protected right to be free from retaliation.

82.     As a direct and proximate result of the acts, omissions, and constitutional violations alleged above, Plaintiff Mr. Sexton has suffered damages, injuries, pain, and suffering, inconvenience, emotional distress, impairment of quality of life, humiliation, amongst other injuries.

<b>PRAYER FOR RELIEF</b>

83.     Plaintiff prays that this Court enter judgment for the Plaintiff and against each of the Defendants, jointly and severally, and grant:

      a.     Appropriate relief at law and equity;

      b.     Economic losses on all claims as allowed by law;

      c.     Compensatory and consequential damages, including damages for personal injuries, including, but not limited to: damages for emotional distress, humiliation, loss of enjoyment of life and income, and other pain and suffering on all claims   by law in the amount to be determined at trial ;

      d.     Punitive damages on all claims allowed by law and in an amount to be determined at trial;

      e.     Attorney's fees and costs associated with this action, including expert witness fees, on all claims allowed by law;

      f.      Prejudgment and post-judgment interest at the appropriate lawful rate; and

      g.     Any further relief that this court deems just and proper, and any other relief as allowed by law.

**REQUEST FOR TRIAL BY JURY**

**Plaintiffs Respectfully Request a Jury On all Issues so Triable**.

Dated this 3rd day of August, 2022.

s/ Kenneth Mark Burton

_____

Kenneth Mark Burton

ATTORNEY AT LAW

The Law Office of Mark Burton, PC

1175 Osage Street, Suite 210

 Denver, CO 80204

Phone 303.517-1187

Fax 303.379-3922

Email: burtonslaw2000@yahoo.com