IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez

Civil Action No. 22-cv-1927-WJM-MEH

MICHAEL SEXTON,

    Plaintiff,

v.

SEAN FARIS, Lieutenant for the Denver Police Department, in his individual capacity,
JOHN DOE 1, Supervisory Officer for the Denver Police Department, in his individual capacity, and
CITY AND COUNTY OF DENVER, a municipality,

    Defendants.

---

**ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANTS' MOTION TO DISMISS**

---

Before the Court is Defendants Lieutenant Sean Faris, John Doe 1 ("Unknown Supervisor"), and the City and County of Denver's ("the City") (collectively, "Defendants") Motion to Dismiss Plaintiff's Third Amended Complaint ("Motion"). (ECF No. 70.) Plaintiff Michael Sexton filed a response (ECF No. 75), and Defendants filed a reply (ECF No. 76). For the following reasons, the Motion is granted in part and denied in part.

## I. BACKGROUND

### A.    Allegations in the Second Amended Complaint[1]

Plaintiff is a journalist with a YouTube channel called "Pikes Peak Accountability,"

---

[1] Although titled the "Third Amended Complaint," the operative complaint (ECF No. 63) is, in fact, Plaintiff's *second* amended complaint. (*See* ECF Nos. 1, 33, 63.) The Court thus refers to it as the Second Amended Complaint ("SAC").

where he publishes his videos for public viewing. (¶ 11.) The SAC alleges that on August 25, 2020, the Denver Police Department ("DPD") was forcibly removing homeless people from an encampment. (¶ 1.) Protesters openly voiced their demand that the DPD stop their sweeps of the encampments, expressing their disagreement with its actions. (*Id.*)

1. Lieutenant Faris

DPD set up a perimeter by holding up yellow tape to separate the protesters from the police operation. (¶ 2.) Plaintiff began filming the event with a cell phone, including interactions with DPD, and made some statements in protest of DPD's abusive conduct:

> Without provocation or legal basis, Denver Police Officer Lt. Faris walked up to Mr. Sexton, who had been lawfully standing behind a temporary perimeter established for lawful protests while holding his camera directly above his head with his hands clearly visible filming Denver Police's treatment of the homeless community, and intentionally recklessly [*sic*] sprayed him directly in the eyes with OC pepper spray, causing him extreme pain, temporary blindness, and an extended period of agony.

(¶ 2.) Plaintiff was not arrested for or charged with any criminal offense. (¶ 3.) Plaintiff alleges that Lieutenant Faris's "hate and disdain for Mr. Sexton was evidenced by his anger and facial expressions expressed immediately during this hostile interaction and is indicative of a malicious and sadistic intent to injure an innocent citizen." (¶ 15.) Further, Plaintiff alleges that Lieutenant Faris and Unknown Supervisor

> knew very well that [he] was a peaceful protestor, and that he had been lawfully participating in a public protest of law enforcement misconduct in furtherance of his First

---

The Background is drawn from the SAC. (ECF No. 63.) The Court assumes the allegations contained in the SAC to be true for the purpose of deciding the Motion. *See Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007). Citations to (¶ __), without more, are references to the SAC.

> Amendment right to protest and was legally filming the police. In direct response to Mr. Sexton's exercise of his civil right to protest law enforcement misconduct and to film police. [*sic*] Defendant Faris and Unknown [S]upervisor recklessly and intentionally attacked Mr. Sexton, or allowed him to be attacked, with complete disregard for Mr. Sexton's First Amendment right to protest and to film the police. In fact, this abusive and retaliatory conduct was taken with the direct intention of violating Mr. Sexton's civil rights. But for Mr. Sexton's exercise of his right to protest, Defendant Faris and Unknown Supervisor would not have attacked him or allowed him to be attacked.

(¶ 18.) Plaintiff alleges that Lieutenant Faris and Unknown Supervisor's "malicious conduct and reckless failure to intervene occurred during Mr. Sexton's lawful exercise of his protected right to collect video footage and public protest." (¶ 19.) He further alleges that "[t]his adverse action is indicative of Faris'[s] and Unknown Supervisor's retaliatory motive to chill Mr. Sexton's speech and documentation of this public protest." (*Id.*)

        2.    <u>Unknown Supervisor</u>

Plaintiff alleges that Unknown Supervisor was present during the protests against law enforcement and witnessed him peacefully assemble and videotape the protest. (¶ 22.) He alleges that "Unknown Supervisor failed to intervene to prevent this retaliatory and unconstitutional attack against an innocent citizen, allowing Mr. Sexton to be sprayed in the eyes with a dangerous chemical." (*Id.*) Further, Unknown Supervisor allegedly knew that Plaintiff would likely lose his vision without an opportunity to flush his eyes out due to the absence of an immediately available wash station. (*Id.*) Unknown Supervisor, along with Lieutenant Faris, allegedly refused to comply with the City's policy to provide Plaintiff medical attention and access to a flush station. (¶ 23.)

3

### 3. Municipal Liability

With respect to municipal liability, Plaintiff alleges that

> Defendant Faris and the Unknown Supervisor intentionally chilled Mr. Sexton's free speech in furtherance of the widespread and well accepted policies of the City and County of Denver and its agencies, namely the Denver Police Department, specifically a Cowboy culture and its derivative and pervasive attacks against citizens for contempt of cop often characterized as attitude arrests. This Cowboy culture within the Denver Police Department has existed for decades and is maintained off the books due to Denver's consistent effort to cover-up the misconduct of officers by falsifying reports or turning a blind eye to the use of excessive force, and persistent refusal to discipline officers for their deliberate violation of internal policies and Federal law enforcement standards.

(¶ 20.)  He further alleges that through DPD, the City has had "long standing and widespread policies, customs, and/or practices that allowed the type of acts described herein, specifically Faris'[s] abusive use of force against Mr. Sexton and the chilling of his free speech, which were necessarily and consciously approved by Mayor Hancock, Chief of Police Pazen, and Safety Manager Robinson."  (¶ 24.)  According to Plaintiff:

> Official policy makers Mayor Hancock, Chief of Police Pazen, and Safety Manager Robinson have final decision-making authority over the [DPD] and its staff, and are responsible for the operations, practices, and the totality of conditions of the [DPD], Denver acts and fails [*sic*] to act through its official policy makers, whose acts and omissions represent the policy, practices, and customs of [the City].

(¶ 25.)

#### a. *Customs, Policies, Practices*

Plaintiff lists the City's policies and practices that he alleges are the "driving force" behind Defendants' alleged violations of his civil rights, including:

> a. Cowboy culture and attitude arrests, designed to punish citizens for opposing Denver Police and don't provide adequate training and supervision regarding these issues;

4

      b.      Targeted attacks of protester by Denver Police and inadequate training and supervision regarding this issue;

      c.      Failure to give audible dispersal orders before the use of force and failure to supervise and train regarding this issue;

      d.      Indiscriminate and inappropriate use of chemical munitions such as tear gas, an [*sic*] inadequate training and supervision regarding this issue;

      e.      Indiscriminate and inappropriate use of Pepper Ball, including as a crowd control/dispersal measure or on anyone disrupting traffic and without warning, and inadequate training and supervision regarding these issues;

      f.      Inappropriate use of pepper spray and inadequate training for this issue;

      g.      Failure to require officers to complete time [*sic*] use-of-force reports, which negatively impact officer accountability, and failure to train regarding this issue;

      h.      Inadequate Body Worn Camera activation during crowd-control situations and failure to trainon [*sic*] this issue;

      i.      Failure to discipline officers for the excessive use of force; and failure to train on these issues; and

      j.      Dictating the rules of engagement for mutual assistance agencies from outside jurisdictions while simultaneously allowing agencies to follow their own policies.

(¶ 26.)  He also alleges that the City, through the DPD and its official policymakers, has a custom and widespread practice of failing to comply with its own written policies, including: "(1) First Amendment protests; (2) retaliation against citizens; (3) reporting official misconduct; (4) investigating the use of force by personnel against citizens; (5) use of force and/or pepper spray; (6) discharging and/or disciplining officers for misconduct; and (7) discharging and/or disciplining officers for concealing misconduct." (¶ 37.)

In the SAC, Plaintiff identifies various moments between May 28 and May 30, 2020 that he alleges demonstrate DPD's "inappropriate use of pepper spray during the GFP[2]." (¶¶ 40–46.) He alleges DPD exhibited a "widespread practice and custom of failing to give dispersal orders or audible dispersal orders prior to use of force." (¶ 47.)

b. *Failure to Train, Supervise, and/or Discipline*

Plaintiff alleges that the City, through its official policymakers Hancock, Pazen, and Robinson, "failed to properly train, supervise, and/or discipline its subordinates Faris, Unknown Supervisor, and others to: (1) prevent the unnecessary use of force against citizens; (2) prevent Denver's widespread Cowboy Culture and attitude arrests; (3) prevent attacks against citizen[s] who protest police misconduct; (4) prevent the cover-up of official misconduct; and (5) ensure that law enforcement are discharged or properly disciplined for the intentional misconduct." (¶ 58.) Allegedly, "Hancock, Pazen, and Robinson, as superior officers, are responsible for the training supervision and discipline of personnel at the [DPD]." (¶ 59.) Plaintiff further alleges that

> the clear lack of proper training and supervision with respect to the above stated deficiencies, and likelihood that this inadequate training and supervision would result in the transgression of persons [*sic*] constitutional rights such as those described herein, the fact that these superior officers fail to train and properly supervise, amounts to deliberate indifference to the constitutional rights of persons with whom the [DPD] and its personnel come into contact with [*sic*], including [Plaintiff].

(*Id.*)

---

[2] Although Plaintiff does not explain the meaning of this acronym, the Court presumes he means "George Floyd Protests."

6

       c.  *Lieutenant Faris Set Off Official Policy for the City*

In contrast with the Amended Complaint ("AC") (ECF No. 33), Plaintiff's SAC further alleges that "Lieutenant Faris acted as an incident commander during the relevant protest and was afforded official policy making authority by chief of police Pazen." (¶ 61.)  Plaintiff alleges the City and DPD "acts and fails through [these] official policy makers." (*Id.*)  Regarding the incident at issue, Plaintiff alleges "Incident commander Faris was a final decision maker with respect to the use and appointment of chemical munitions during the September 25th protest." (*Id.*)  According to Plaintiff, Lieutenant Faris's decision to use chemical munitions against him "set off an unconstitutional policy for the [DPD] and [the City]" with respect to "use of force" (¶ 62), "failure to decontaminate" (¶ 63), and "retaliation against protestors" (¶ 64).  Moreover, Plaintiff alleges Lieutenant Faris's "abusive and reckless conduct was further ratified and or [*sic*] authorized by chief police Pazen with the intent and understanding that this unconstitutional conduct would violate citizen civil rights and continue to foster a culture of violating citizen civil rights." (¶ 65.)

Accordingly, Plaintiff requests that the Court enter judgment in his favor and against Defendants, jointly and severally, and grant appropriate relief at law and equity; economic losses on all claims allowed by law; compensatory and consequential damages; punitive damages; attorney's fees and costs; and pre-judgment and post-judgment interest. (ECF No. 63 at 38-39.)

  **B.**  **Procedural History**

Plaintiff filed this civil rights lawsuit on August 3, 2022. (ECF No. 1.)  In its September 2023 Order, the Court granted in part and denied in part Defendants' motion to dismiss the AC without prejudice ("Prior Order"). (ECF No. 62.)

7

Plaintiff filed the SAC on October 6, 2023, reasserting his three claims against Defendants: (1) excessive force in violation of the Fourteenth Amendment pursuant to 42 U.S.C. § 1983; (2) denial of free speech in violation of the First Amendment pursuant to § 1983; and (3) retaliation in violation of the First Amendment pursuant to § 1983. (ECF No. 63.) Plaintiff also reasserts a *Monell* claim against the City under numerous theories of municipal liability. (*See id.*)

## II. LEGAL STANDARD

Under Rule 12(b)(6), a party may move to dismiss a claim in a complaint for "failure to state a claim upon which relief can be granted." "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003) (internal quotation marks omitted).

The Rule 12(b)(6) standard requires the Court to "assume the truth of the plaintiff's well-pleaded factual allegations and view them in the light most favorable to the plaintiff." *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007). Thus, in ruling on a motion to dismiss under Rule 12(b)(6), the dispositive inquiry is "whether the complaint contains 'enough facts to state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Granting a motion to dismiss "is a harsh remedy which must be cautiously studied, not only to effectuate the spirit of the liberal rules of pleading but also to protect the interests of justice." *Dias v. City & Cnty. of Denver*, 567 F.3d 1169, 1178 (10th Cir.

8

2009) (internal quotation marks omitted). "Thus, 'a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely.'" *Id.* (quoting *Twombly*, 550 U.S. at 556). However, "[t]he burden is on the plaintiff to frame a 'complaint with enough factual matter (taken as true) to suggest' that he or she is entitled to relief." *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Twombly*, 550 U.S. at 556). "[C]omplaints that are no more than 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action,' . . . 'will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555).

### III. ANALYSIS

#### A.     Claim 1: Excessive Force in Violation of the Fourteenth Amendment

The Court explained in the Prior Order that the substantive due process analytical framework applies to Plaintiff's excessive force claim pursuant to the Fourteenth Amendment. (*See* ECF No. 62 at 8–12.) "To determine whether a use of force is excessive under the Fourteenth Amendment [courts] consider three factors: '(1) the relationship between the amount of force used and the need presented; (2) the extent of the injury inflicted; and (3) the motives of the state actor.'" *Estate of Booker v. Gomez,* 745 F.3d 405, 423 (10th Cir. 2014) (quoting *Roska,* 328 F.3d at 1243).

In the Prior Order, the Court found that Plaintiff's AC plausibly alleged the first and second *Roska* factors—*i.e.,* proportionality and the extent of injury inflicted. (*See* ECF No. 62 at 12–13.) However, the Court dismissed Plaintiff's excessive force claim without prejudice upon finding that Plaintiff's "allegations of Lieutenant Faris's motive [were] conclusory and, in the undersigned's view, not sufficient to satisfy the standard of shocking the conscience." (*Id.* at 13–15.) Defendants now argue the allegations in the

9

SAC as to Lieutenant Faris's motives continue to "lack the factual enhancement necessary to survive a motion to dismiss." (ECF No. 70 at 4-6.)

In considering Lieutenant Faris's "motive," the Court reiterates the Tenth Circuit's instruction that "[f]orce inspired by malice or by unwise, excessive zeal amounting to an abuse of official power that shocks the conscience may be redressed under the Fourteenth Amendment." *Roska ex rel. Roska v. Peterson,* 328 F.3d 1230, 1243 (10th Cir. 2003) (quotations omitted). "The level of culpability required for action to shock the conscience largely depends on the context of the action." *Browder v. Casaus*, 675 F. App'x 845, 847 (10th Cir. 2017).

"[T]he intent to harm standard most clearly applies in rapidly evolving, fluid, and dangerous situations which preclude the luxury of calm and reflective deliberation." *Green v. Post*, 574 F.3d 1294, 1301 (10th Cir. 2009) (quoting *Perez v. Unified Gov't of Wyandotte Cnty. Kan. City, Kan.*, 432 F.3d 1163, 1167 (10th Cir. 2005)). This Court has applied the "intent to harm" standard in considering a motion to dismiss where the allegations in the operative complaint demonstrated that the defendants "encountered an exigent and high-pressured situation . . . resulting from an armed standoff with an individual who had barricaded himself in [a residence] after shooting two DPD officers." *Quintana v. City & Cnty. of Denver,* 2021 WL 229270, at *10 (D. Colo. Jan. 22, 2021).

On the other hand, "when actual deliberation is practical," the officer's actions need only exhibit "conscious, deliberate indifference to an extreme risk of very serious harm to the plaintiff" to violate the Fourteenth Amendment. *Green,* 574 F.3d at 1301, 1303. In evaluating whether an officer acted with deliberate indifference, a court must assess "the circumstances that surround the conduct at issue and the governmental

interest at stake."  *Id.* at 1302 (quoting *Radecki v. Barela*, 146 F.3d 1227, 1231 (10th Cir. 1998)); *see Bublitz v. Cottey*, 327 F.3d 485, 490 (7th Cir. 2003) ("To rise to the level of a constitutional violation, a deliberately indifferent act must be one which is conscience-shocking—the Supreme Court has acknowledged that not every deliberately indifferent action will rise to the 'constitutionally shocking level.'").

Defendants argue Plaintiff is required to plead facts showing Lieutenant Faris consciously intended to harm him.  (ECF No. 70 at 4; ECF No. 76 at 1-3.)  Plaintiff does not clearly articulate which standard he believes should apply in this case but nonetheless seems to argue that the allegations in the SAC satisfy even the heightened intent to harm standard.  He directs the Court to 39 paragraphs from the SAC, which he asserts "highlight[] Faris'[s] state of mind—intent to harm."  (ECF No. 75 at 6 (citing ¶¶ 7-24, 66-87, 72-78).)

Even assuming the intent to harm standard applies here, as Defendants assert, the Court agrees with Plaintiff that he has plausibly alleged Lieutenant Faris intended to harm him with adequate specificity to survive Rule 12(b)(6) scrutiny.  While Plaintiff unhelpfully directs the Court to broad swaths of the SAC, much of which is unchanged from Plaintiff's AC (*see* ECF No. 75 at 6 (citing ¶¶ 7-24, 66-87, 72-78)), the Court nonetheless notes that the SAC does incorporate additional allegations in support of Lieutenant Faris's intent to harm.  (*See* ¶ 72 ("Mr. Farris [*sic*] was standing behind a secure barrier with the assistance of numerous officers in absence if [*sic*] any threat of harm and identified Mr. Sexton an innocent citizen and directly charged towards him and sprayed him in the eyes and face with a chemical agent with the intent and understanding of causing injury and severe pain.")); ¶ 73 ("During the subject protest,

11

Farris [*sic*] stood behind the police barriers where he was able to view and identify law violators and serious threats, but when he identified Mr. Sexton as an innocent citizen and absence of any threat, Farris [*sic*] became enraged and intentionally charged at Mr. Sexton with his pepper spray pointed directly at Mr. Sexton, discharging this chemical agent unnecessarily.  Farris [*sic*] acted in absence of any intent to restore order or arrest Mr. Sexton, and purely with an intent to cause injury to Mr. Sexton out of malice.").)

While "further context as provided by discovery" is ultimately needed to resolve whether Lieutenant Faris's behavior rises to the level of conscience shocking, *Currier v. Doran,* 242 F.3d 905, 920 (10th Cir. 2001), the Court concludes Plaintiff has alleged sufficient facts to support an excessive force claim pursuant to the Fourteenth Amendment at this juncture.  Accordingly, the Court denies the Motion with respect to Claim 1 as to Lieutenant Faris.

  **B.**  **Claim 2: Denial of Free Speech in Violation of the First Amendment**

The Court previously dismissed Plaintiff's First Amendment denial of free speech claim without prejudice upon finding, in the absence of any allegation of a "preemptively proscriptive action" by Defendants, the claim was duplicative of Plaintiff's First Amendment retaliation claim.  (*See* ECF No. 62 at 15-16.)  Plaintiff reasserts a virtually identical First Amendment denial of free speech claim in the SAC, having made no apparent attempt to rectify the deficiencies identified in the Court's Prior Order. (*Compare* ECF No. 33 at ¶¶ 78–92 *with* ECF No. 63 at ¶¶ 88–103.)  Moreover, Plaintiff altogether fails in his opposition brief to respond to Defendants' arguments seeking dismissal of the denial of free speech claim.  (*See generally* ECF No. 75.)

Given Plaintiff's failure to yet again cure the pleading deficiencies in his operative

complaint, the Court dismisses his denial of free speech claim with prejudice.

### C.  Claim 3: Retaliation in Violation of the First Amendment

Although the Court previously rejected Defendants' argument that Plaintiff failed to plausibly allege his retaliation claim, Defendants reassert this argument in the Motion. (ECF No. 70 at 7.)

The allegations upon which the Court previously found Plaintiff had adequately stated the retaliation claim are substantively unchanged in the SAC.[3] (*Compare* ECF No. 33 at ¶ 95 with ECF No. 63 at ¶ 106.)  Accordingly, the Court denies the Motion with respect to Claim 3 as to Lieutenant Faris.

### D.  Failure to Intervene Claim Against Unknown Supervisor

In the Prior Order, the Court dismissed without prejudice all claims brought against Unknown Supervisor, "find[ing] that the allegations against Unknown Supervisor in the AC [were] mere legal conclusions." (ECF No. 62 at 19.)  As such, the Court "[could] not conclude that Plaintiff ha[d] alleged that Unknown Supervisor had a realistic opportunity to intervene."  (*Id.*)

Defendants again move to dismiss all claims against Unknown Supervisor, asserting "Plaintiff made no changes to his allegations related to the 'Unknown Supervisor' in [the SAC]."  (ECF No. 70 at 8.)  The Court agrees.  The allegations Plaintiff cites in his brief in opposition are substantively unchanged from the AC. (*Compare* ECF No. 33 at ¶¶ 18, 24–25 *with* ECF No. 63 at ¶¶ 18, 23–24.)  As Plaintiff

---

[3] For the first time in in their reply brief, Defendants assert that, based on an expert report newly appended to Plaintiff's SAC (*see* ECF No. 63–1), "Plaintiff's own allegations establish that Lt. Faris was not motivated by retaliatory animus when he deployed the pepper spray."  (ECF No. 76 at 5.)  However, as Defendants did not raise this argument in their opening brief, the Court does not consider it.  *United States v. Harrell,* 642 F.3d 907, 918 (10th Cir. 2011) ("[A]rguments raised for the first time in a reply brief are generally deemed waived.").

has failed to remedy the deficiencies identified by the Court in the Prior Order, the Court dismisses with prejudice Plaintiff's claims against Unknown Supervisor.

### E. Municipal Liability

Defendants maintain that Plaintiff has again inadequately alleged all three requisite elements—policy, causation, and state of mind—of his municipal liability claim against the City. (ECF No. 70 at 8-15); *Schneider v. City of Grand Junction Police Dep't,* 717 F.3d 760, 769 (10th Cir. 2013). In the Prior Order, the Court dismissed Plaintiff's municipal liability claim upon finding that "Plaintiff's allegations [in the AC] as to the third element [were] sufficiently factually deficient as to justify dismissing the claim," such that it need not analyze each of the first two elements independently. (ECF No. 62 at 22.) The Court once again reaches the same conclusion.

As a preliminary matter, Defendants argue that Plaintiff's SAC still fails to identify his specific theory of municipal liability, contrary to the Court's instruction in the Prior Order. (ECF No. 70 at 8; ECF No. 62 at 25.) The Court agrees. The Court specifically instructed Plaintiff that his employment of "lengthy lists throughout his AC and his brief . . . ma[d]e it difficult to discern precisely what theories of municipal liability he asserts." (ECF No. 62 at 24.) Rather than disentangling these lengthy lists to identify his particular theory of municipal liability, Plaintiff alleges yet *another* potential theory of municipal liability predicated on Lieutenant Faris's "final decision-making authority." (*See* ECF No. 75 (citing ¶¶ 61-65).) As a result, the Court continues to struggle to discern which theory of municipal liability Plaintiff is actually alleging.

As best the Court can surmise, Plaintiff still appears to argue that he has alleged deliberate indifference only with respect to a failure to train, supervise, and discipline theory of municipal liability. (ECF No. 75 at 11.) He again directs the Court to the same

14

paragraph numbers cited in his brief in response to Defendants' motion to dismiss the AC.  (*Compare* ECF No. 37 at 19–20 (citing ¶¶ 26-43) *with* ECF No. 75 at 11 (citing ¶¶ 26-43).)  Yet the only substantive change to the cited paragraphs in the SAC is that one paragraph now includes citations to other lawsuits filed against the City and an expert report Plaintiff has newly appended to his complaint.  (*Compare* ECF No. 33 at ¶ 37 *with* ECF No. 63 at ¶ 35.)  Plaintiff alleges in the SAC these citations evidence "Denver's policy makers fail[ure] to rectify . . . obvious needs for correction and obvious unconstitutional policies, customs, and/or practices" and to "implement policies that would adequately correct and compensate for these abusive practices."  (¶ 35).  However, as alleged in the SAC, this revised allegation appears to support Plaintiff's municipal liability theory based on an informal custom amounting to a widespread practice (*see id.*)—not the failure to train, supervise, and discipline theory of municipal liability Plaintiff advances in his response brief.  (ECF No. 75 at 11.)

The Court has already cautioned Plaintiff that it would almost certainly not offer him a *third* bite at the apple.  (ECF No. 62 at 25.)  As Plaintiff has failed to remedy the various deficiencies with his municipal liability claim referenced above, the Court dismisses with prejudice Plaintiff's municipal liability claim.

## IV. CONCLUSION

For the reasons set forth above, the Court ORDERS as follows:

1. The Motion (ECF No. 70) is GRANTED IN PART AND DENIED IN PART as follows:

    a. Claim 2 (denial of free speech) is DISMISSED WITH PREJUDICE as duplicative of Claim 3 (retaliation);

   b. All claims against Defendant John Doe 1 are DISMISSED WITH PREJUDICE;

   c. The municipal liability claim is DISMISSED WITH PREJUDICE; and

   d. The Motion is otherwise DENIED;

2. The parties are ORDERED to timely comply with the Magistrate Judge's Order (ECF No. 69) directing the parties to file a joint status report proposing a dispositive motion briefing schedule, as well as any other proposed modifications to the Scheduling Order if appropriate, within seven business days of this Order.

Dated this 16th day of September, 2024.

BY THE COURT:

_____
William J. Martínez
Senior United States District Judge